UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOYANN ROETT O'CONNOR, } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:16-cv-02068-RDP |
| } | |
| J.C. PENNEY CORPORATION, } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

This case is before the court on the Motion for Summary Judgment filed by Defendant J.C. Penney Corporation, Inc. ("JC Penney" or "Defendant"). (Doc. # 40). The Motion is fully briefed, and the parties have filed evidentiary submissions. (Docs. # 40, 41, 43, 44, 45). After careful review, the court concludes that the Motion for Summary Judgment (Doc. # 40) is due to be granted.

**I.    Relevant Undisputed Facts[1]**

On December 29, 2014, Plaintiff, who is African-American, visited JC Penney's store in Alabaster, Alabama. (Docs. # 7 at ¶ 4; 21 at ¶ 4; 40 at ¶ 3). Plaintiff claims that, during this visit, she requested to have her head shaved at JC Penney's salon but was denied this service on the basis of her race. (Docs. # 41-1 at p. 10; 41-2 at p. 2). Specifically, Plaintiff alleges that she had the following conversation with white salon employee Amber Smith ("Smith"), who was

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

working at the front counter of the salon:

> [Amber] said, "We don't do African-American hair, it's a little hard, go somewhere else. You can go somewhere down the street and they may be able to help your hair. We don't have any person here to do your hair." And, [Plaintiff] said, "Why can't you shave my hair off?" And [Amber] said, "We don't deal with the 'N' word."

(Doc. # 41-1 at p. 11). No one else witnessed this conversation. (*Id.*).

That same day, following this alleged conversation, Plaintiff spoke with manager Autumn Spraggins ("Spraggins"), who is African-American, to complain about Smith. (Docs. # 32 at p. 1; 41-1 at p. 12). After speaking with Spraggins, Plaintiff returned to the salon to determine Smith's name, and Smith offered to shave Plaintiff's hair. (Docs. # 41-1 at p. 23; 41-2 at p. 2). Plaintiff refused Smith's offer to shave Plaintiff's hair and left the store (although no one from JC Penney asked Plaintiff to leave). (Doc. # 41-1 at p. 21, 23-24).

On December 27, 2016, Plaintiff, who is appearing *pro se*, filed her initial complaint against Defendant. (Doc. # 1). Following an initial review, the court identified deficiencies in Plaintiff's complaint and directed her to file an amended complaint. (Doc. # 4). Plaintiff filed an amended complaint on January 24, 2017. (Doc. # 5). After reviewing the amended complaint, the court directed Plaintiff to file a second amended complaint to remedy additional deficiencies. (Doc. # 6). On February 9, 2017, Plaintiff submitted her second amended complaint which alleges that (1) Defendant violated 42 U.S.C. § 1981 by acting with discriminatory intent towards her and (2) she suffered emotional and mental anguish from Defendant's conduct.[2]

---

[2] In reviewing Plaintiff's initial complaint, the court liberally construed the complaint to present a discrimination claim under Title II of the Civil Rights Act of 1964. (Doc. # 4 at p. 1). Nevertheless, it determined that any Title II claim in the initial complaint was not plausibly pled. (*Id.*). Plaintiff's operative complaint does not assert a Title II claim. (*See generally* Doc. # 7). Furthermore, she conceded that such a Title II claim would be meritless in this case. (Doc. # 16 at p. 2).

(Doc. # 7 at ¶¶ 11, 12). The court considers Defendant's Motion for Summary Judgment (Doc. # 40), in turn.

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV. Analysis

The key question in this case is not whether Smith made a racially-discriminatory remark, but rather whether Plaintiff can point to substantial evidence that she was prevented from making a purchase. The court notes that "JC Penney vehemently disputes that any such conversation occurred as claimed by Plaintiff (including that any racial slurs were used)." (Doc. # 40 at p. 2 n.1). The court also notes that Plaintiff has recounted this alleged conversation differently at various times throughout the litigation and that Plaintiff did not make any assertion that Smith used a racial slur until her September 19, 2017 deposition. (*Compare* Docs. # 1 at p. 4; 7 at ¶ 6; 16 at p. 1; 26 at p. 1; 32 at p. 1; 41-2 at p. 2-3 *with* Doc. # 41-1 at p. 10). Nevertheless, at this stage, the court must view the evidence in the light most favorable to Plaintiff. Therefore, it assumes, for purposes of the motion, that the statement was made as Plaintiff claimed in her deposition. But, as noted, that does not mean Plaintiff prevails on the instant motion.

In order to state a claim under § 1981, a plaintiff must establish the following three elements: (1) she is a member of a racial minority, (2) a defendant intended to discriminate against her on the basis of race, and (3) "the discrimination concerned one or more of the activities enumerated in the statute." *Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012) (quoting *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007)). The Eleventh Circuit has adopted the Fifth's Circuit standard for determining whether an incident in a retail establishment concerns contractual activity protected under § 1981. *See id.* at 1233-34 (affirmatively citing and discussing *Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003)). Under that standard, a complaint "must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase." *Id.* at 1234 (quoting *Arguello*, 330 F.3d at 358-59).

In this case, Defendant contends that Plaintiff's § 1981 claim is due to be dismissed because it is undisputed that JC Penney offered Plaintiff the services she requested. (Doc. # 40 at p. 4-7). Plaintiff counters that (1) JC Penney's Handbook states that the company is committed to treating their employees with respect and dealing fairly and honestly with its customers,[3] (2) nobody "in their right mind" would accept Smith's offer to perform Plaintiff's requested services after Smith's hurtful words, and (3) Plaintiff's case is distinguishable from the cases that Defendant cited because Smith used a racial slur when speaking with Plaintiff. (Doc. # 40). After viewing the Rule 56 evidence, the court agrees with Defendant that, similar to *Lopez v. Target Corp.*, 676 F.3d 1230 (11th Cir. 2012), Plaintiff was not "actually prevented" from receiving services from JC Penney; therefore, her § 1981 claim is due to be dismissed.

In *Lopez*, a cashier claimed that her register was closed when the plaintiff, a Hispanic customer, attempted to complete a purchase. *Id.* at 1231. The cashier then proceeded to serve the next non-Hispanic customer while laughing and gesturing toward the plaintiff. *Id.* A supervisor sent the plaintiff back to the same register, and the cashier reiterated that the register was closed specifically for the plaintiff. *Id.* at 1231-32. The plaintiff moved to another register and completed his purchase. *Id.* at 1232. The Eleventh Circuit held that the plaintiff in *Lopez* failed to state a claim under § 1981 because he "was not 'actually denied the ability . . . to make, perform, enforce, modify, or terminate a contract.'" *Id.* (quoting *Kinnon*, 490 F.3d at 892).

Here, Plaintiff admits that, shortly after Smith told her she should go somewhere else to get a haircut, Smith changed course and offered to perform this service for her. (Docs. # 41-1 at p. 21, 23-2; 43 at p. 3). Plaintiff also admits that she refused Smith's offer, left the store, and that no one asked her to leave the store. (Doc. # 41-1 at p. 21, 23-2). Accordingly, although Plaintiff

---

[3] Plaintiff's Handbook argument does not present a § 1981 claim as it does not "demonstrate the loss of an actual . . . contract interest." *Kinnon*, 490 F.3d at 892 (citing *Arguello*, 330 F.3d at 358) (internal quotations omitted).

6

may have been deterred from making her purchase of services from JC Penney, Plaintiff was not "actually prevented" from making this purchase. *See Lopez*, 676 F.3d at 1234. Plaintiff's argument that no one "in their right mind" would have accepted services from Smith after Smith's alleged statements does not negate the fact that Plaintiff was not denied her right to receive her requested services from Defendant. *See id*. at 1235 (explaining that which clerk ultimately offered to complete a transaction is irrelevant to a § 1981 claim). Plaintiff's allegations, which amount to an assertion that she was "delayed and mistreated" when attempting to make her purchase, "standing alone, cannot establish a § 1981 claim." *Id.* at 1235; *see also Anderson v. Dolgencorp*, No. 1:14-cv-144-WKW WO, 2014 WL 2051224 (M.D. Ala. May 19, 2014) (holding that an African-American plaintiff failed to state a § 1981 claim when she voluntarily left the store after being embarrassed and mistreated during a check-out process because the cashier "did not actually prevent [the plaintiff] from completing her retail transaction" and she "decided to leave the Dollar General store of her own choosing").

Plaintiff's argument that the facts of her case are distinguishable from the cases cited by Defendant because Smith allegedly used a racial slur during their initial conversation also misses the mark. *See Lopez*, 676 F.3d at 1235 ("As this Court has explained, § 1981 is not a general civility code."). The use of such offensive language on its own does not demonstrate the loss of an actual contract interest. *See Kinnon*, 490 F.3d at 889, 892 (holding that an African-American plaintiff who refused a pizza delivery because it had taken too long and was later verbally assaulted with highly offensive racial slurs by the store manager had not established a § 1981 because she was not denied the opportunity to contract with the defendant); *Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1313-15 (N.D. Ga. 2001) (dismissing a § 1981 claim where a cashier used offensive racial slurs "because the plaintiffs were not denied the right to make and enforce any

contracts"). Because Plaintiff was offered the opportunity to contract with JC Penney, Defendant's Motion for Summary Judgment (Doc. # 40) is due to be granted and this action is due to be dismissed. *See Lopez*, 676 F.3d at 1235.

**V.     Conclusion**

For all of these reasons, the court concludes that Defendant's Motion for Summary Judgment (Doc. # 40) is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this May 29, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE